1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

James N. Fincher, SBN 196837
Merced County Counsel
Roger S. Matzkind, SBN 77331
Chief Civil Litigator
2222 M Street, Room 309
Merced, CA  95340
Tel:    (209) 385-7564
Fax:    (209) 726-1337
rmatzkind@co.merced.ca.us

Attorney for Defendants County of Merced (including the Merced County District Attorney Office, a department of the County of Merced), Andrea Valtierra-Gongora and Curtis Gorman

In the United States District Court

For the Eastern District of California, Fresno Division

| | |
|---|---|
| George Aguaristi,<br><br>              Plaintiff,<br><br>         v.<br><br>County of Merced; Merced County District Attorney Office; Andrea Valtierra-Gongora; Curtis Gorman; and Does 1-20,<br><br>              Defendants. | Case No. 1:18-cv-01053-DAD-EPG<br><br>**Memorandum of Points and Authorities in Support of Motion to Dismiss First Amended Complaint**<br>**(Fed. R. Civ. Proc. 12(b)(6))**<br><br><br>**Date: November 20, 2018**<br>**Time: 9:30 a.m.**<br>**Courtroom: Courtroom 5, Seventh Floor** |

COME NOW the County of Merced (including the Merced County District Attorney Office, a department of the County of Merced), Andrea Valtierra-Gongora and Curtis Gorman and provide the following memorandum of points and authorities in support of their motion to dismiss.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Table of Contents

I.      Introduction ...................................................................................................7

II.     Legal Standard for Motion to Dismiss ...........................................................8

III.    The FAC Fails to State Any Claim Against the Merced County District Attorney Office:  It is Not a Proper "Party" and Must Be Dismissed...............9

IV.    The First Cause of Action Fails to State a Claim Upon Which Relief Can Be Granted Against Merced County:  Plaintiff Fails to Allege a *Monell* Cause of Action ..................................................................................10

V.     The First Cause of Action Fails to State a Claim Upon Which Relief Can Be Granted Against Valtierra-Gongora or Gorman: Plaintiff Fails to Allege a Fourth Amendment Violation, But Alleges Qualified Immunity ....................................................................................................12

VI.    The Second Cause of Action Fails to State a Claim Upon Which Relief Can Be Granted: Plaintiff Fails to Allege Actionable Trespass and Fails to Plead Inapplicability of Immunities ............................................................17

VII.   The Third Cause of Action Fails to State a Claim Upon Which Relief Can Be Granted: Plaintiff fails to Plead Trespass to Chattel and Fails to Plead Inapplicability of Immunities ................................................................20

VIII. The Fourth Cause of Action Fails to State a Claim Upon Which Relief Can Be Granted: Plaintiff Fails to Allege Intentional Infliction of Emotional Distress and Fails to Plead Inapplicability of Immunities .............21

IX.    The Fifth Cause of Action Fails to State a Claim Upon Which Relief Can Be Granted: Plaintiff Fails to Allege a Cause of Action for Gross Negligence or Gross Negligence per se and Fails to Plead Inapplicability of Immunities ....................................................................................................22

X.     The Sixth Cause of Action Fails to State a Claim Upon Which Relief Can Be Granted: Plaintiff Fails to Allege a Cause of Action for Negligence and Fails to Plead Inapplicability of Immunities ........................23

XI.    Plaintiff Has Failed to Allege a Basis for Punitive Damages Against the Individual Defendants ...................................................................................23

XII.   Conclusion....................................................................................................25

Merced County Counsel
2222 M Street
Merced, CA 95340
(209) 385-7564

1

**Table of Authorities**

2

**U.S. Constitution**

3

  U.S. Const., amend. IV ........................................................................ 10, 12, 14, 15, 17, 25

4

  U.S. Const., amend. XIV ........................................................................................... 10

5

6

**Federal Cases**

7

  *Anderson v. Creighton,*
     483 U.S. 635 (1987) ....................................................................................... 16

8

  *Ashcroft v. al-Kidd,*
     563 U.S. 731 (2011) ....................................................................................... 16

9

  *Ashcroft v. Iqbal,*
10
     556 U.S. 662 (2009) ................................................................................. 8, 9, 25

11

  *Balistreri v. Pacifica Police Dep't,*
     901 F.2d 696 (9th Cir. 1990) .......................................................................... 8

12

  *Bell Atlantic Corp. v. Twombly,*
13
     550 U.S. 544 (2007) ......................................................................................... 8

14

  *Brooks v. Smith,*
     828 F.3d 910 (9th Cir. 2016) ................................................................... 16, 17

15

16

  *City of Canton v. Harris,*
     489 U.S. 378 (1989) ....................................................................................... 12

17

  *Dang v. Cross,*
     422 F.3d 800, 807 (9th Cir.2005) .................................................................. 24

18

19
  *Dougherty v. City of Covina,*
     654 F.3d 892 (9th Cir. 2011) .......................................................................... 10

20

  *eBay, Inc., v. Bidder's Edge, Inc.,*
     100 F. Supp. 2d 1058 (N.D. Cal. 2000)......................................................... 20

21

22
  *Flores v. County of Los Angeles,*
     758 F.3d 1154 (9th Cir. 2014) ....................................................................... 11

23

  *Garcia v. City of Merced,*
24
     637 F. Supp. 2d 731 (E.D. Cal. 2008) ............................................................ 9

25
  *Hope v. Pelzer,*
     536 U.S. 730 (2002) ....................................................................................... 16

26

  *Hunter v. Bryant,*
     502 U.S. 224 (1991) ....................................................................................... 15

27

28
  *Lindsey v. Shalmy,*
     29 F.3d 1382 (9th Cir. 1994) .......................................................................... 13

Merced County Counsel
2222 M Street
Merced, CA 95340
(209) 385-7564

Memorandum of Points and Authorities in Support of Motion to Dismiss

*Malley v. Briggs*,
   475 U.S. 335 (1986) ....................................................................... 16

*McDade v. West*,
   223 F.3d 1135 (9th Cir. 2000) .................................................... 11

*Megargee v. Wittman*,
   550 F.Supp2d 1190 (E.D. Cal. 2008) ........................................ 24

*Menotti v. City of Seattle*,
   409 F.3d 1113 (9th Cir. 2005) .................................................... 11

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) ....................................................................... 13

*Monell v. New York City Department of Social Services*,
   436 U.S. 658 (1978) ......................................................... 7, 10, 12, 25

*Morgan v. Woessner*,
   997 F.2d 1244 (9th Cir.1993) ...................................................... 24

*Mullenix v. Luna*,
   136 S.Ct. 305, 314 (2015) ............................................................. 16

*Payton v. New York*,
   445 U.S. 573, 603 (1980) .............................................................. 17

*Pearson v. Callahan*,
   555 U.S. 223, 236 (2009) .............................................................. 13

*Perez v. City of Placerville*,
   2008 WL 4279386, *9 (E.D. Cal. 2008) ..................... 15, 21, 23, 24

*Plumeau v. Sch. Dist. No. 40 County of Yamhill*,
   130 F.3d 432, 438 (9th Cir. 1997) .............................................. 10

*San Jose Charter of the Hells Angels Motorcycle Club, et al v. City of San Jose
   et al*,
   402 F.3d 962 (9th Cir. 2005) ................................... 13, 14, 15, 16, 22

*Saucier v. Katz*,
   533 U.S. 194 (2001) ............................................................... 13, 16

*Smith v. Wade*,
   461 U.S. 30 (1983) ......................................................................... 24

*Stump v. Gates*,
   777 F.Supp. 808, 816 (D.Colo.1991) ............................................ 9

*Trevino v. Gates*,
   99 F.3d 911 (9th Cir. 1996) ......................................................... 11

*Vance v. County of Santa Clara*,
   928 F.Supp. 993 (N.D.Cal.1996) ................................................... 9

*Woodward v. City of Tucson*,
   870 F.3d 1154 (9th Cir 2017) ...................................................... 16

1

**Federal Statutes and Rules**

2

42 U.S.C. § 1983 ....................................................................9, 10, 13, 16, 24

3

Fed. R. Civ. P. 8(a)(2) .......................................................................... 8

4

Fed. R. Civ. P. 12(b) ............................................................................ 8

5

6

**State Constitution**

7

Cal. Const., art. XI, §21 ....................................................................... 9

8

9

**State Cases**

10

*Becerra v. County of Santa Cruz*,
68 Cal. App. 4th 1450 (1998)................................................. 18

11

12

*Christensen v. Sup. Ct.*,
54 Cal. 3d 868 (1991)........................................................... 21

13

*Church of Scientology v. Armstrong*,
232 Cal. App. 3d 1060 (1991)................................................ 20

14

15

*Continental Ins. Co. v. American Protection Industries*,
197 Cal. App. 3d 322 (1987)................................................. 22

16

*Conway v. County of Tuolumne*,
231 Cal. App. 4th 1005 (2014)........................................... 19, 20

17

18

*Harshbarger v. City of Colton*,
197 Cal. App. 3d 1335 (1988)................................................ 18

19

*In re Marriage of Nicholas*,
186 Cal. App. 4th 1566 (2010)............................................... 20

20

21

*Keyes v Santa Clara Valley Water Dist.*,
128 Cal. App. 3d 882 (1982)................................................. 18

22

*Ladd v. County of San Mateo*,
12 Cal. 4th 913 (1996)......................................................... 23

23

24

*Lopez v. Southern Cal. Rapid Transit Dist.*,
40 Cal. 3d 780 (1985)......................................................... 23

25

*Miklosy v. Regents of the University of California*,
44 Cal. App. 4th 876 (2008)................................................. 18

26

*People v. Ray*,
21 Cal. 4th 464 (1999)......................................................... 18

27

28

*Plotnik v. Meihaus*,
208 Cal. App. 4th 1590 (2012)............................................... 20

Merced County Counsel
2222 M Street
Merced, CA 95340
(209) 385-7564

Memorandum of Points and Authorities in Support of Motion to Dismiss

1

*Ralphs Grocery Co. v. Victory Consultants, Inc.*,
       17 Cal. App. 5th 245 (2017)........................................................................17

2

*Rosencrans v. Dover Images*,
       192 Cal. App. 4th 1072 (2011)...................................................................22

3

4

5 **States Statutes**

6   Cal. Civ. Code § 3294 ..................................................................................24

7   Cal. Gov't Code § 812...................................................................................9

8   Cal. Gov. Code § 815.2 .........................................................................18, 20, 21

9   Cal. Gov. Code § 815.2 (b) ..........................................................................19

10  Cal. Gov't Code § 820 (a) ...........................................................................18

11  Cal. Gov't Code § 820.2 ....................................................................18, 19, 20, 21

12  Cal. Gov't Code § 32002...............................................................................9

13  Cal. Penal Code § 597 (g).............................................................................23

14  Cal. Penal Code § 830.1(a) ...........................................................................19

15  Cal. Penal Code § 835a .........................................................................20, 21, 23

16

17

18

19

20

21

22

23

24

25

26

27

28

Merced County Counsel
2222 M Street
Merced, CA 95340
(209) 385-7564

Memorandum of Points and Authorities in Support of Motion to Dismiss

1    **I.      Introduction**

2          The First Amended Complaint ("FAC") seeks to allege seven causes of action, all

3    arising out of the same alleged incident.  Plaintiff alleges that on May 30, 2018, "the County

4    of Merced with participation and in conjunction with Merced County District Attorney Office,

5    were present" on his property.  (Doc. 8 at 4:1-3.)  He does not allege why they were there.

6    Plaintiff alleges he was asleep in the house when "Defendants" entered his property without

7    his consent.  (Doc. 8 at 5:7-9.)  Plaintiff alleges the driveway to his property was gated, topped

8    with barbed wire and had "beware of dog" signs.  (Doc. 8 at 5:3-6.)  He alleges they were

9    aware of dogs inhabiting the property before entering.  (Doc. 8 at 5:10-11.)  After they entered

10   the property, "Defendant maced, then shot and killed Plaintiff's …dog…." (Doc. 8 at 5:12-

11   15.)  He believes Defendant Andrea Valtierra-Gongora shot the dog which was also "engaged"

12   by Defendant Gorman.  (Doc. 8 at 5: 12-21.)  Plaintiff alleges they "failed to make any efforts

13   to save Samson's life and did not check for a pulse."  (Doc. 8 at 5:22-23.)  He alleges they

14   removed the dog from the premises and cleaned up its blood "with Plaintiff's own water

15   hose." (Doc. 8 at 5:24-27.)  He alleges "An officer on the scene …urinated on Plaintiff's

16   property."  (Doc. 8 at 6:1-2.)  He alleges that he was "informed, believes and thereon alleges

17   that any warrant Defendants had to enter Plaintiff's Property was invalid, and/or was exceeded

18   by law enforcement in regards to their conduct."  (Doc. 8 at 6:27-7:2.)

19         Most importantly, plaintiff appears to admit there was a warrant to enter his property,

20   but that during the entrance, one of the dogs apparently had to be shot after a lesser means of

21   control was attempted.  As set forth further below, Plaintiff fails to allege any *Monell* cause of

22   action and fails to set forth nonconclusory allegations to support respondeat superior theories

23   for state based causes of action.  The facts alleged seem to reflect the opposite.

24         Pursuant to Standing Rule 1C, the parties conferred regarding the pleading.  The

25   parties stipulated to permit an amended complaint.  (Doc. 7.)  Counsel communicated on at

26   least four occasions and Plaintiff's counsel was provided documentation including the arrest

27   warrant, order issuing the warrant and law enforcement case reports.  Plaintiff made some

28

1    modifications and felt the First Amended Complaint was sufficient.  (Matzkind Declaration,

2    Ex. A.)

3    **II.**      **Legal Standard for Motion to Dismiss**

4        Fed. R. Civ. P. 12(b) provides, in pertinent part, ". . . a party may assert the following

5    defenses by motion:  (6) failure to state a claim upon which relief can be granted. . . ."

6        Under Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of

7    the claim showing that the pleader is entitled to relief."  The complaint must give defendant

8    "fair notice of what the claim is and the grounds upon which it rests."  (*Bell Atlantic Corp. v.*

9    *Twombly,* 550 U.S. 544, 555 (2007) (internal quotation and modification omitted).)

10       To meet this requirement, the complaint must be supported by factual allegations.

11    "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

12    statements, do not suffice."  (*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).)  "While legal

13    conclusions can provide the framework of a complaint," neither legal conclusions nor

14    conclusory statements are themselves sufficient, and such statements are not entitled to a

15    presumption of truth.  (*Id.* at 679.)  *Iqbal* and *Twombly* therefore prescribe a two-step process

16    for evaluation of motions to dismiss.  The court first identifies the non-conclusory factual

17    allegations, and the court then determines whether these allegations, taken as true and

18    construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to

19    relief.  (*Iqbal,* 556 U.S. at 679.)

20       Plausibility refers to whether the non-conclusory factual allegations, when assumed to

21    be true, allow the court to "draw the reasonable inference that the defendant is liable for the

22    misconduct alleged."  (*Iqbal, supra*, 556 U.S. at 678.)  "The plausibility standard is not akin to

23    a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has

24    acted unlawfully."  (*Ibid.* [quoting *Twombly*, 550 U.S. at 557].)  A complaint may fail to show

25    a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts

26    alleged under a cognizable legal theory.  (*Balistreri v. Pacifica Police Dep't,* 901 F.2d 696,

27    699 (9th Cir. 1990).)

28       A pleading "demands more than an unadorned, the-defendant-unlawfully-harmed-me

Merced County Counsel
2222 M Street
Merced, CA 95340
(209) 385-7564

1  accusation.  A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the

2  elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked

3  assertions' devoid of 'further factual enhancement.'"  (*Iqbal, supra,* 556 U.S. at 678 [quoting

4  *Twombly*, 550 U.S. at 546].)

5        In the case at hand, Plaintiff repeatedly relies on unsupported conclusory allegations,

6  such as that any warrant was illegal (Doc. 8 at 6:27-7:2), and that actions were taken with the

7  intent to cause emotional distress (Doc. 8 at 14:4-7).

8  **III.     The FAC Fails to State Any Claim Against the Merced County District**

9  **Attorney Office:  It is Not a Proper "Party" and Must Be Dismissed**

10       The County of Merced is a public entity, recognized as a legal subdivision of the State

11 of California by the state Constitution and the Government Code.  (See Cal. Const., art. XI,

12 §21; Cal. Gov't Code §§ 812 and 32002.)  The Merced County District Attorney Office is a

13 department of the County of Merced.  Indeed, Plaintiff alleges the office "…is a municipal law

14 enforcement agency/department/entity within the County of Merced and governed and/or

15 controlled and/or under the jurisdiction of the County of Merced."  (Doc. 8 at 3:3-8.)

16       As this court has ruled:

17              Under Section 1983, a "person" acting under color of law may be
              sued for violations of the U.S. Constitution or federal laws. The
18              term "persons" under section 1983 encompasses state and local
              officials sued in their individual capacities, private individuals and
19              entities which acted under color of state law, and local
              governmental entities. *Vance v. County of Santa Clara,* 928
20              F.Supp. 993, 995–996 (N.D.Cal.1996). But "persons" do not
              include municipal departments. *Id.,* "Naming a municipal
21              department as a defendant is not an appropriate means of pleading
              a § 1983 action against a municipality." *Stump v. Gates,* 777
22              F.Supp. 808, 816 (D.Colo.1991). The County of Merced is the
              proper defendant in a § 1983 suit, not the Merced County Sheriff's
23              Department, which is **DISMISSED WITHOUT LEAVE TO**
              **AMEND**
24
25

26 (*Garcia v. City of Merced*, 637 F. Supp. 2d 731, 760 (E.D. Cal. 2008) Emphasis the court's.)

27       As Plaintiff alleges, the "District Attorney Office" is similarly situated.  Accordingly, it

28 also is not a proper party.

1      The above citations pertain to § 1983 context.  However, as Plaintiff seems to allege,

2  the District Attorney's Office does not exist as a separate entity.  As such, it cannot be sued for

3  any cause of action.  A party that is not cognizable under the law cannot be sued, or sue,

4  collect on a judgment, or be collected from, on a judgement.

5      **IV.**    **The First Cause of Action Fails to State a Claim Upon Which Relief Can Be**

6      **Granted Against Merced County:  Plaintiff Fails to Allege a *Monell* Cause of**

7      **Action**

8      The First Cause of Action purports to be based on 42 U.S.C. § 1983, claiming a

9  violation of the Fourth Amendment[1], the violation being the killing of his dog. (Doc. 8 at 8:9-

10  21.)  This iteration of the complaint also alleges the same actions against the individual

11  investigators.  As *Monell* concerns entities, the allegations against the individuals are

12  addressed below.

13      In *Monell v. New York City Department of Social Services,* 436 U.S. 658 (1978), the

14  Supreme Court held that municipal liability under 42 U.S.C. § 1983 cannot be based on a

15  respondeat superior doctrine, but must be founded upon evidence that the government unit

16  itself supported a violation of constitutional rights.  (*Id.* at 691-695.)  Municipal liability

17  attaches only when "execution of a government's policy or custom, whether made by its

18  lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

19  inflicts the injury."  (*Id.* at 694.)

20      In order to establish liability for governmental entities under *Monell*, a plaintiff must

21  prove "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2)

22  that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the

23  plaintiff's constitutional right; and, (4) that the policy is the moving force behind the

24  constitutional violation."  (*Dougherty v. City of Covina,* 654 F.3d 892, 900 (9th Cir. 2011)

25  [quoting *Plumeau v. Sch. Dist. No. 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)

26  (internal quotation marks and citations omitted].)

27

28  _____

[1] The Fourth Amendment is directed to prohibitions against Congress.  Presumably, Plaintiff intends to allege a violation of the Fourteenth Amendment, applying the Fourth Amendment.

Merced County Counsel
2222 M Street
Merced, CA 95340
(209) 385-7564

1    "There are three ways to show a policy or custom of a municipality: (1) by showing a

2    longstanding practice or custom which constitutes the standard operating procedure of the

3    local governmental entity; (2) by showing that the decision-making official was, as a matter of

4    state law, a final policymaking authority whose edicts or acts may fairly be said to represent

5    official policy in the area of decision; or (3) by showing that an official with final

6    policymaking authority either delegated that authority to, or ratified the decision of, a

7    subordinate." (*Menotti v. City of Seattle,* 409 F.3d 1113, 1147 (9th Cir. 2005) [citations and

8    punctuation omitted].)

9    The courts have clearly stated that a single occurrence is insufficient to support a lack

10   of training or custom allegation.  "A plaintiff cannot demonstrate the existence of a municipal

11   policy or custom based solely on a single occurrence of unconstitutional action by a non-

12   policymaking employee."  (*McDade v. West,* 223 F.3d 1135, 1141 (9th Cir. 2000).)  "Liability

13   for improper custom may not be predicated on isolated or sporadic incidents; it must be

14   founded upon practices of sufficient duration, frequency and consistency that the conduct has

15   become a traditional method of carrying out policy."  (*Trevino v. Gates*, 99 F.3d 911, 918 (9th

16   Cir. 1996).)  "A pattern of similar constitutional violations by untrained employees is

17   ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train,

18   though there exists a narrow range of circumstances in which a pattern of similar violations

19   might not be necessary to show deliberate indifference."  (*Flores v. County of Los Angeles,*

20   758 F.3d 1154, 1159 (9th Cir. 2014) [citations and internal quotation marks omitted].)  Only a

21   single incident is alleged.

22   Indeed, the First Amended Complaint ("FAC") alleges that the County is the "chief

23   investigator and/or the individual in charge of policymaking within the District Attorney's

24   Office for investigations" and that they should have had other policies, training and

25   procedures.  (Doc. 8 at 9:16-23.)  He alleges the county failed to adopt adequate policies or

26   procedures as to planning non-lethal ways in dealing with dogs.  (Doc. 8 at 9:12-15.)  Yet at

27   the same time, he alleges the contrary:  lesser means were attempted.  Not a single other

28   incident is alleged.

1     As the Supreme Court explained in *City of Canton v. Harris,* 489 U.S. 378 (1989):

2

3 > In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

13 (*Id*. at 390-391 [internal citations omitted].)

14     Plaintiff fails to allege any facts to support a *Monell* cause of action. Instead, he

15 alleges a single incident where DA investigators entered the yard of his property, perhaps with

16 a warrant, while he slept inside. Although more defensive actions may have been attempted

17 by the individual defendants, but not pled by Plaintiff, Plaintiff alleges that after the entry, Ms.

18 Valtierra-Gongora shot and killed Plaintiff's dog, after mace was first attempted. While he

19 uses conclusory language that this was "unjustified", he does not reference facts regarding

20 whether or not the dog attacked and was actually jumping on Ms. Valtierra-Gongora when she

21 shot. As far as the FAC alleges, with the many obvious known facts omitted, there was no

22 Fourth Amendment violation and no *Monell* based cause of action. Inadequate facts are

23 alleged that the county had a policy or custom in violation of the Fourth Amendment that

24 caused injury to him.

25 **V.    The First Cause of Action Fails to State a Claim Upon Which Relief Can Be**

26        **Granted Against Valtierra-Gongora or Gorman: Plaintiff Fails to Allege a**

27        **Fourth Amendment Violation, But Alleges Qualified Immunity**

28     Ms. Valtierra-Gongora and Mr. Gorman also are named as defendants in the First

1    Cause of Action, purporting to allege a cause of action under 42 U.S.C. § 1983.

2           Qualified immunity "is an *immunity from suit* rather than a mere defense to liability;

3    and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to

4    trial." (*Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).)  Thus, "the question of immunity is not

5    to be 'routinely placed … in the hands of the jury." (*Lindsey v. Shalmy*, 29 F.3d 1382, 1384

6    (9th Cir. 1994).)

7            *Saucier v. Katz*, 533 U.S. 194 (2001) held that the first step in determining whether a

8    defendant is entitled to qualified immunity is to determine whether there has been a

9    constitutional violation.  The second step set forth in Saucier was whether the right at issue

10   was "clearly established" at the time of defendant's alleged misconduct.  (*Id*. at 201.)  *Pearson*

11   *v. Callahan,* 555 U.S. 223, 236 (2009) reconsidered *Saucier* and held that, while the sequence

12   is often appropriate, it is not mandatory.  Regardless of which element is addressed first, the

13   FAC is insufficient.

14          The FAC alleges, and relies upon, *San Jose Charter of the Hells Angels Motorcycle*

15   *Club, et al v. City of San Jose et al,*[2] 402 F.3d 962 (9th Cir. 2005).  (Doc 8 at 9:1-2.)

16   However, applying that case to the FAC shows Plaintiff's' allegations are insufficient to

17   support the cause of action and that the individual defendants are entitled to qualified

18   immunity, at a minimum.  The case arose from the appeal by police officers of the district

19   court's denial of their motions for qualified immunity.  (*Id*. at 965.)  Law enforcement had

20   simultaneously served ten search warrants at Hells Angels members' residences largely to find

21   evidence to support a sentencing enhancement in a murder case.  (*Id*. at 962-967, 972.)  The

22   civil case arose from two searches whereat law enforcement entered and killed dogs on the

23   premises.

24          At the "Souza" residence, law enforcement knew in advance that there were two guard

25   dogs and a warning that the property was protected by a guard dog.  They knew Souza owned

26   a Rottweiler that was known to attack without provocation.  (*Hells Angels, supra,* 402 F.3d at

27   968.)  On the day of the search, the entry team entered through the house, and had no reason to

28

---

[2] Hereinafter sometimes referred to as "*Hells Angels*".

1  enter the backyard where the dog was located.  The team went to the backyard anyway to look

2  for the dog.  When they saw it, it purportedly growled and started to advance.  They

3  immediately shot and killed the Rottweiler.  They had no plan to use, and did not use, any

4  lesser method to deal with the dog. (*Id.* at 968.)

5       At the "Vieira" residence, law enforcement knew in advance that there might be dogs.

6  The plan was to poke at any dogs through a fence with a shotgun.  If that did not work, they

7  would engage the dogs.  When the team approached the gate, three large dogs resembling

8  Bullmastiffs ran toward the gate, barking and growling.  Although they had pepper spray, they

9  did not attempt to use it, instead, just yelling at the dogs and poking at them with a shotgun.

10  When this did not work, they shot two dogs, wounding one and killing the other.  (*Hells*

11  *Angels, supra,* 402 F.3d at 969.)

12       The appellate court concluded the search itself was beyond the authorized scope and

13  was unreasonably destructive: law enforcement had cut a mailbox off its post, jack-hammered

14  a sidewalk and broke a refrigerator.  This "unnecessarily destructive behavior" violated the

15  Fourth Amendment.  (*Hells Angels, supra,* 402 F.3d at 974.)  Qualified immunity was rejected

16  because the unlawfulness "would have been apparent to a reasonable officer." (*Id*. at 975.)  As

17  the appellate court explained with regard to the dogs, "Reasonableness is the touchstone of any

18  seizure under the Fourth Amendment."  (*Hells Angels, supra,* 402 F.3d at 975f.)  A court

19  would have to examine the totality of the circumstances and balance private and governmental

20  interests to determine the Fourth Amendment issue.  (*Id*. at 975.)  In *Hells Angels, supra,* 402

21  F.3d 962, the court concluded that the balance was against the governmental interest.  The

22  intrusion was severe.  To the opposite of the case at hand, Vierra was handcuffed near where

23  the dog lie dead and bleeding.  (*Id*. at 975.)  Here, Plaintiff alleges he slept through the whole

24  matter, the dog was removed, and the area washed by defendants.  There, as the court noted,

25  the only real plan was to shoot the dogs with a shotgun. (*Id*. at 976.)  In *Hells Angels*, the dogs

26  were sought out and killed.  Indeed, there was no need to enter the back yard, at all in one

27  instance.  Here, the indication from the allegations is the opposite.

28

1       *Hells Angels* also rejected qualified immunity as to the dogs, holding that prior cases

2  would alert the officers that the Fourth Amendment prohibits "…the killing of a person's dog,

3  or the destruction of a person's property, when that destruction is unnecessary-*i.e.*, when less

4  intrusive, or less destructive, alternatives exist.  A reasonable officer should have known that

5  to create a plan to enter the perimeter of a person's property, knowing all the while about the

6  presence of dogs on the property, without considering a method for subduing the dogs besides

7  killing them, would violate the Fourth Amendment." (*Hells Angels, supra,* 402 F.3d at 977-

8  978.)  The case was very specific and limited to the facts of that case, specifically referring to

9  the circumstances of that case. (*Id.* at 978.)

10       In *Perez v. City of Placerville*, 2008 WL 4279386, *9 (E.D. Cal. 2008), Placerville

11  police officers went to the plaintiff's home to arrest him. One of the officers shot and killed

12  the plaintiff's dog while trying to "secure the location." The office claimed this was done in

13  order to protect his fellow officer and police dog from being attacked by the dog. (*Perez,*

14  *supra*, 2008 WL 4279386 at *1.) Summary judgment was granted as to most causes of action,

15  including "unlawful seizure of personalty" in violation of the Fourth Amendment.  (*Id.* at *2.)

16  As to this issue, the court first determined there was no constitutional violation.  The district

17  court distinguished *Hells Angels, supra*, as involving a situation where the law enforcement

18  individuals knew of the presence of the dogs well in advance of the incident and had not

19  strategies to immobilize the dogs.  They had no realistic plan other than killing the dogs.

20  (*Perez, supra*, 2008 WL 4279386 at *8.)  In the case at hand, Plaintiff affirmatively alleges the

21  individual defendants attempted a lesser means, apparently unsuccessfully.

22       Assuming a Constitutional violation is adequately alleged, Plaintiff alleges sufficient

23  facts to support qualified immunity.

24       As the Supreme Court explained in *Hunter v. Bryant*, 502 U.S. 224 (1991), "The

25  qualified immunity standard gives ample room for mistaken judgments by protecting all but

26  the plainly incompetent or those who knowingly violate the law.  This accommodation for

27  reasonable error exists because officials should not err always on the side of caution because

28  they fear being sued." (*Id.* at 229 [Internal citations and quotation marks omitted for

1  readability.])  This seems especially appropriate under the facts at hand when a countervailing

2  risk is losing a chunk of flesh, or worse.

3       In *Woodward v. City of Tucson*, 870 F.3d 1154 (9th Cir 2017), the 9th Circuit reversed

4  the denial of summary judgment for the excessive force portion of the case where police shot

5  and killed a person who advanced toward them in a threatening manner and carrying a broken

6  hockey stick.  (*Id.* at 1162-1163.)  Deciding to begin with the second prong of the *Saucier,*

7  *supra,* analysis, the court concluded "… that reasonable officers in Defendants' positions

8  would not have known that shooting Duncklee violated a clearly established right.  Indeed, the

9  case law makes clear that the use of deadly force can be acceptable in such a situation."  (*Id.* at

10  1162.)  Case law, including *Hells Angels, supra,* makes clear that the actions alleged could be

11  acceptable in the alleged scenario.

12       In *Brooks v. Smith*, 828 F.3d 910 (9th Cir. 2016) the appellate court reversed the denial

13  of a motion to dismiss a 42 U.S.C. § 1983 action against a courtroom marshal who allegedly

14  used excessive force in removing a disruptive bail bondsman from the court upon the judge's

15  instructions.  (*Id.* at 913, 920.)  The marshal had shoved the bail bondsman through the

16  courtroom's double doors.  (*Id.* at 920.)  Quoting from *Malley v. Briggs*, 475 U.S. 335, 341

17  (1986), the court explained the "clearly established standard" protected those who were not

18  "plainly incompetent" or who knowingly violated the law.  (*Brooks, supra,* 828 F.3d at 919.)

19  As to how particularized the conduct must be to the specific applicable law, *Brooks* explained:

20      Although the Supreme Court "has rejected the idea that 'an official
21  action is protected by qualified immunity unless the very action in
question has previously been held unlawful,' " *id.* at 314[3]
22  (quoting *Anderson v. Creighton*, 483 U.S. 635, 640… (1987)), it is
always the case that "existing precedent must have placed the
23  statutory or constitutional question beyond debate," *al–Kidd*, 563
U.S. at 741. "[T]he crux of the qualified immunity test is whether
24  officers have 'fair notice' that they are acting unconstitutionally."
*Mullenix*, 136 S.Ct. at 314… (quoting *Hope v. Pelzer*, 536 U.S.
25  730, 739…(2002)).

26  (*Brooks, supra,* 828 F.3d at 920.  Parallel citations omitted for brevity.)

27       The required evaluation of whether or not a clearly established right was violated must

28

[3] Citing from *Mullenix v. Luna*, 136 S.Ct. 305, 314 (2015).

Merced County Counsel
2222 M Street
Merced, CA 95340
(209) 385-7564

be based on the "plausible" "allegations of the complaint." (*Brooks, supra,* 828 F.3d at 922.)

Notwithstanding its threadbare and conclusory allegations, the FAC alleges two investigators entered the premises, had some interaction with a dog, one attempted to mace him, and apparently failing that, shot him. They removed the dog's body and cleaned up the area. These few facts do not allege a constitutional violation, but do allege reasonable conduct and qualified immunity. Instead, the totality of the facts alleged present the opposite. The sparse facts set forth a scenario where the individual defendants planned, attempted to use a lesser form of force, then had to make a split second decision—exactly what qualified immunity is designed to protect.

**VI.     The Second Cause of Action Fails to State a Claim Upon Which Relief Can Be Granted: Plaintiff Fails to Allege Actionable Trespass and Fails to Plead Inapplicability of Immunities**

The elements of trespass are: "(1) the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) lack of permission for the entry or acts in excess of permission; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm." (*Ralphs Grocery Co. v. Victory Consultants, Inc.*, 17 Cal.App.5th 245, 262 (2017).) The "trespass" must be an "…unlawful interference with possession of property." (*Ibid.*, Internal citation omitted.)

Plaintiff alleges, at least at one point, that he was informed and believed that any warrant was invalid. (Doc. 8 at 6:27-7:2.) He fails to specify any defects to support this conclusory allegation. If present with a warrant, then, there was no trespass, since presence was authorized. Property may be entered for the purposes of enforcing an arrest warrant. (*Payton v. New York*, 445 U.S. 573, 603 (1980) ("…for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within.").) In the case at hand, Plaintiff does not allege defendants entered the dwelling, but rather, there was only the lesser intrusion of the outside yard. As *Payton* explained, "It is true that an arrest

1   warrant requirement may afford less protection than a search warrant requirement, ..." (*Id*. at

2   602)

3        Moreover, common law tort liability against public entities has been abolished.  (See

4   e.g., *Miklosy v. Regents of the University of California*, 44 Cal. App. 4th 876, 899 (2008).)

5   Plaintiffs are required to plead a statutory basis for their claim.  (*Ibid.*)  "In California, all

6   government tort liability must be based on statute."  (*Becerra v. County of Santa Cruz*, 68 Cal.

7   App. 4th 1450, 1457 (1998).)  "Thus, in the absence of some constitutional requirement,

8   public entities may be liable *only* if a statute declares them to be liable."  (*Harshbarger v. City

9   of Colton*, 197 Cal. App. 3d 1335, 1339 (1988) [citations omitted].)

10        The FAC alleges the officers are liable pursuant to California Government Code

11  section 820 (a), which provides "Except as otherwise provided by statute (including Section

12  820.2), a public employee is liable for injury caused by his act or omission to the same extent

13  as a private person."  Section 820.2 provides for immunity to public employees "…for injury

14  resulting from his act or omission where the act or omission was the result of the exercise of

15  the discretion vested in him, whether or not such discretion be abused."   The FAC alleges the

16  County is liable pursuant to California Government Code section 815.2. (Doc 8 at 11: 10-15).

17  That section basically applies the concept of respondeat superior to public entities, but also

18  provides, "Except as otherwise provided by statute, a public entity is not liable for an injury

19  resulting from an act or omission of an employee of the public entity where the employee is

20  immune from liability."  Private persons do not have immunities or enter premises with a

21  warrant.

22        Plaintiffs fail to plead facts showing the inapplicability of immunities, as required by

23  *Keyes v Santa Clara Valley Water Dist.,* 128 Cal. App. 3d 882, 885-886 (1982) ("…the

24  plaintiff must plead facts sufficient to show his cause of action lies outside the breadth of any

25  applicable statutory immunity.").

26        As the California Supreme Court explained in *People v. Ray,* 21 Cal. 4th 464, 473

27  (1999), pertaining to the lawfulness of a search in a criminal case, "…it has long recognized

28  that [n]ecessity often justifies an action which would otherwise constitute a trespass, as where

1   the act is prompted by the motive of preserving life or property and reasonably appears to the

2   actor to be necessary for that purpose." (Citation and internal quotation marks omitted.)

3         Further, California Penal Code section 835a provides:
              Any peace officer who has reasonable cause to believe that the
4             person to be arrested has committed a public offense may use
              reasonable force to effect the arrest, to prevent escape or to
5             overcome resistance.
              A peace officer who makes or attempts to make an arrest need not
6             retreat or desist from his efforts by reason of the resistance or
              threatened resistance of the person being arrested; nor shall such
7             officer be deemed an aggressor or lose his right to self-defense by
              the use of reasonable force to effect the arrest or to prevent escape
8             or to overcome resistance.
9

10        Plaintiff alleges the District Attorney's Office is a law enforcement

11  agency/department/entity employing investigators performing law enforcement duties such as

12  serving arrest and search warrants. He alleges Mr. Gorman and Ms. Valtierra-Gongora are

13  investigators. (Doc 8 at 3: 3-17.) District attorney investigators are peace officers. (Cal. Pen.

14  Code § 830.1(a).)

15        Plaintiff fails to allege any facts other than the clear inference to be drawn that Merced

16  County employees/agents were using force to overcome resistance. Indeed, Plaintiff alleges at

17  least one alternative means, mace, was attempted prior to the dog being shot.

18        In *Conway v. County of Tuolumne*, 231 Cal.App.4th 1005 (2014), the Fifth District

19  Court of Appeal held that the decision of a SWAT team to use tear gas in effecting an arrest

20  was a discretionary decision immunizing the County of Tuolumne under California

21  Government Code sections 820.2[4] and 815.2[5], subdivision (b). (*Conway,* 231 Cal.App.4th at

22  1008, 1016, 1020-1021.) This was based on the rationale that split second decisions had to be

23  made for safety. (*Id*. at 1020.)

24

25

26  [4] The section provides "Except as otherwise provided by statute, a public employee is not liable for an
    injury resulting from his act or omission where the act or omission was the result of the exercise of the
27  discretion vested in him, whether or not such discretion be abused."
    [5] The subdivision provides: "(b) Except as otherwise provided by statute, a public entity is not liable
28  for an injury resulting from an act or omission of an employee of the public entity where the employee
    is immune from liability."

1    The appellate court affirmed summary judgment against a complaint alleging

2  negligence, nuisance, trespass, and strict liability for ultrahazardous activity.  (*Conway, supra*,

3  231 Cal.App.4th at 1011.)  The same discretionary decision as in *Conway* is a reasonable

4  inference from the FAC in the case at hand, yet Plaintiff fails to allege around the immunity.

5  He cannot rely on conclusory language, such as "unjustified" to avoid the defects in the

6  complaint.

7    If the employees are immune under Penal Code section 835a and Government Code

8  820.2, the County is immune. (Cal. Gov. Code § 815.2.)  Plaintiff failed to plead facts that the

9  immunity was not applicable.

10  **VII.    The Third Cause of Action Fails to State a Claim Upon Which Relief Can Be**

11  **Granted: Plaintiff fails to Plead Trespass to Chattel and Fails to Plead**

12  **Inapplicability of Immunities**

13    The Third Cause of Action purports to allege trespass to chattel based on the shooting

14  of the dog.  As the court explained in *Plotnik v. Meihaus,* 208 Cal. App. 4th 1590, 1606

15  (2012), the tort "…lies where an intentional interference with the possession of personal

16  property has proximately caused injury." (Citation and italics omitted.)  The tort certainly

17  requires some element of wrongfulness.  As the court explained in *eBay, Inc., v. Bidder's*

18  *Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000), one element of the tort, in the context of

19  trespass into a computer system, was that the defendant acted "intentionally and without

20  authorization".  (*Id.* at 1069.) As explained in *Church of Scientology v. Armstrong*, 232 Cal.

21  App. 3d 1060, 1072 (1991)[6], a person is privileged to trespass to a chattel for the purpose of

22  defending themselves or another or their interests when invasion of the defender's or another's

23  interests are reasonably probable and the actor "reasonably believes" the harm can be safely

24  prevented only by the injury inflicted.

25

26

27

28  _____
[6] Unrelated issue noted as being abrogated in *In re Marriage of Nicholas*, 186 Cal. App. 4th 1566, 1579 (2010).

1    Of course, when dealing with public entities, the Government Code also provides

2 immunities, i.e., California Government Code sections 820.2, 815.2, as well as Penal Code

3 section 835a, all addressed above.

4    Here, Plaintiff appears to rely solely on the shooting death of the dog while,

5 apparently, a warrant was in the process of being enforced.  Again, Plaintiff fails to allege any

6 defect in the warrant.

7    Again, Plaintiff fails to allege any specific statutory basis for a cause of action against

8 Merced County and fails to allege that immunities from California Penal Code section 835a

9 and Government Code sections 820.2 and 815.2 are not applicable.

10   **VIII.   The Fourth Cause of Action Fails to State a Claim Upon Which Relief Can Be**

11   **Granted: Plaintiff Fails to Allege Intentional Infliction of Emotional Distress**

12   **and Fails to Plead Inapplicability of Immunities**

13   The elements of intentional infliction of emotional distress are:

14        (1) extreme and outrageous conduct by the defendant with the
             intention of causing, or reckless disregard of the probability of

15        causing, emotional distress; (2) the plaintiff's suffering severe or
             extreme emotional distress; and (3) actual and proximate causation

16        of the emotional distress by the defendant's outrageous conduct.

17   (*Perez v. City of Placerville*, 2008 WL 4279386, *9 (E.D. Cal. 2008), citing from *Christensen*

18   *v. Sup. Ct.*, 54 Cal.3d 868, 903 (1991).)

19   In *Perez*, *supra*, 2008 WL 4279386, summary judgment was granted as to most causes

20 of action, including for intentional infliction of emotional distress.  As to that tort, while the

21 loss of the dog was considered a "tragedy", the facts of the case did not support outrageous

22 conduct.  Similarly there was no evidence of intent to cause the plaintiff severe emotional

23 distress.  (*Id*. at *9.)

24   The FAC alleges only the conclusory language that the actions were done with the

25 intent to cause serious emotional distress or reckless disregard.  There is no averment to

26 support the conclusion, or for that matter, that the investigators even knew Plaintiff.  Plaintiff

27 alleges that he slept through the matter.  (Doc. 8 at 5:7.)  He did not discover the dead dog or

28 any blood, certainly allegations which show the opposite of an intent to inflict emotional

1   distress.  (Doc. 8 at 5:24-27.)  The dog was removed and the blood cleaned up.  This is the

2   opposite of what was considered so traumatic in *Hells Angels, supra,* 402 F.3d at 975.

3       **IX.**    **The Fifth Cause of Action Fails to State a Claim Upon Which Relief Can Be**

4                **Granted: Plaintiff Fails to Allege a Cause of Action for Gross Negligence or**

5                **Gross Negligence per se and Fails to Plead Inapplicability of Immunities**

6       Without any additional factual allegations, the Fifth and Sixth Causes of Action seek to

7   allege gross negligence and gross negligence per se.  He concludes the previous allegations

8   amounted to an "extreme departure from the ordinary standard of conduct."  (Doc. 8 at 15:21-

9   25.)  Somehow, Plaintiff, concludes it is actionable and outrageous conduct not to check for a

10  pulse or provide first aid (Doc. 8 at 5:22-23) to a dog the investigators were forced to shoot

11  and kill after first trying a lesser deterrent.

12      As the court explained in *Rosencrans v. Dover Images*, 192 Cal. App. 4th 1072, 1082

13  (2011):

14          Gross negligence is pleaded by alleging the traditional elements of
    negligence: duty, breach, causation, and damages. … However, to

15          set forth a claim for gross negligence the plaintiff must allege
    extreme conduct on the part of the defendant. …The conduct

16          alleged must rise to the level of either a want of even scant care or
    an extreme departure from the ordinary standard of conduct.

17

18  (Citations and quotation marks within marks omitted for readability.)

19      However, as the appellate court explained in *Continental Ins. Co. v. American*

20  *Protection Industries*, 197 Cal. App. 3d 322, 329 (1987), "Numerous California cases have

21  discussed the doctrine of gross negligence.  Invariably these cases have turned upon an

22  interpretation of a statute which has used the words 'gross negligence' in the text."  Thus, the

23  concept of gross negligence seems to necessarily involve violation of specific statutes.

24      Plaintiff's conclusions are devoid of supportive allegations. The argumentative

25  allegation of taking the body is inconsistent with the only plausible inference, i.e., that they

26  removed the dog and cleaned up the blood so as to not inflict distress. This would be after the

27  purported negligence, i.e., shooting the dog.  The value of the allegation is that it shows the

28  individual investigators' good and non-malicious intents.

1    Plaintiff's reliance on the California Penal Code section adds nothing.  The code

2    section makes it a crime to "maliciously and intentionally" kill or torture an animal.  The

3    section does not create a cause of action and further, does not constitute a waiver of sovereign

4    immunity such as to lead to potential liability of the county, or its employees.  Indeed, the

5    statute speaks to impoundment of animals upon conviction.  (Cal. Pen. Code § 597 (g).)  This

6    is hardly consistent with a circumstance involving a waiver of sovereign immunity,

7    particularly during the execution of a warrant, against the entity or its employees.  Again,

8    Plaintiff fails to plead around the other immunities specified above, i.e., discretionary acts and

9    use of force to effect an arrest, necessity, and that if the employees are immune, so is the

10   public entity.

11   **X.    The Sixth Cause of Action Fails to State a Claim Upon Which Relief Can Be**

12   **Granted: Plaintiff Fails to Allege a Cause of Action for Negligence and Fails to**

13   **Plead Inapplicability of Immunities**

14   The elements of a negligence cause of action are: (1) a legal duty to use due care; (2) a

15   breach of that duty; (3) the breach was the proximate or legal cause of the resulting injury; and

16   (4) actual loss or damage resulting from the breach of the duty of care.  (*Ladd v. County of San*

17   *Mateo,* 12 Cal. 4th 913, 917 (1996).)

18   Plaintiff fails to allege how the county or its employees were negligent, fails to allege

19   around Penal Code section 835a immunity and fails to allege a statute which would waive

20   sovereign immunity.  As in *Perez v. City of Placerville*, 2008 WL 4279386 at * 9, (summary

21   adjudication granted), to properly allege the tort of negligence, a plaintiff still must allege an

22   applicable state statute.  (*Ibid*.)

23   Although negligence normally may be generally pled, such is not the case against a

24   public entity.  (*Lopez v. Southern Cal. Rapid Transit Dist*., 40 Cal. 3d 780, 795 (1985).)

25   Plaintiff fails to allege non-conclusory facts.

26   **XI.   Plaintiff Has Failed to Allege a Basis for Punitive Damages Against the**

27   **Individual Defendants**

28   Plaintiff seeks punitive damages from Mr. Gorman and Ms. Valtierra-Gongora.  Again,

Merced County Counsel
2222 M Street
Merced, CA 95340
(209) 385-7564

1    he fails to allege non-conclusory facts to support such a claim.

2            As to the state causes of action, California Civil Code section 3294 enables an award

3    for exemplary damages where a defendant has been guilty of oppression, fraud or malice.

4    Those terms are defined by subparagraph (c) of that code section as follows:

5            (1) "Malice" means conduct which is intended by the defendant to cause
             injury to the plaintiff or despicable conduct which is carried on by the
6            defendant with a willful and conscious disregard of the rights or safety of
             others.

7            (2) "Oppression" means despicable conduct that subjects a person to cruel
             and unjust hardship in conscious disregard of that person's rights.
8
             (3) "Fraud" means an intentional misrepresentation, deceit, or
9            concealment of a material fact known to the defendant with the intention
             on the part of the defendant of thereby depriving a person of property or
10           legal rights or otherwise causing injury.

11           Fraud is not applicable here.  There is nothing alleged in the FAC to support intentional

12   injury to plaintiff with a willful and conscious disregard.  Indeed, the allegations are to the

13   contrary.  Similarly, there are no facts alleged of despicable conduct. In *Perez v. City of*

14   *Placerville, supra*, 2008 WL 4279386 at *11, the court dismissed the punitive damage

15   allegations against the officer who shot the dog based on a lack of evidence of malice,

16   oppression or despicable conduct.  Here, sufficient facts are not alleged.  Negligence is

17   obviously insufficient to support punitive damages allegations.

18           As to the 42 U.S.C. § 1983 causes of action, as Judge O'Neill explained in *Megargee v.*

19   *Wittman*, 550 F.Supp2d 1190 (E.D. Cal. 2008),

20           …punitive damages are recoverable "when the defendant's conduct is
             shown to be motivated by evil motive or intent, or when it involves
21           reckless or callous indifference to the federally protected rights of
             others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d
22           632 (1983); *see Morgan v. Woessner,* 997 F.2d 1244, 1255 (9th
             Cir.1993). Section 1983 punitive damages can also be awarded to
23           address "malicious, wanton, or oppressive acts or omissions."  *Dang
             v. Cross,* 422 F.3d 800, 807 (9th Cir.2005). Conduct is oppressive "if
24           done in a manner which injures or damages or otherwise violates the
             rights of another person with unnecessary harshness or severity as by
25           misuse or abuse of authority or power or by taking advantage of some
             weakness or disability or the misfortunes of another
26           person." *Dang,* 422 F.3d at 809.

27

28           Plaintiff has failed to allege facts supporting such circumstances.

1
## XII.    Conclusion

2     The First Amended Complaint consists of careful selections of conclusions which beg

3  for completeness.  Nevertheless, Plaintiff alleged that defendants may have entered pursuant to

4  a warrant, that he had dogs present, which for some reason two investigators maced one, then

5  shot and killed him.  They removed the dog and cleaned up the blood.  Plaintiff did not see or

6  hear anything and slept through the entire matter.  He cannot so selectively plead and then rely

7  on a legally insufficient complaint alleging nothing "more than a sheer possibility that a

8  defendant has acted unlawfully."  *Iqbal, supra*, 556 U.S. at 678 [quoting *Twombly*, 550 U.S. at

9  557].)

10     The motion to dismiss maybe fairly divided into the following general points:

11     First, Plaintiff improperly named a county department as a defendant.

12     Second, Plaintiff failed to allege a *Monell* cause of action against the county.

13     Third, considering the totality of the circumstances, Plaintiff failed to allege a Fourth

14  Amendment violation, but alleged qualified immunity.

15     Fourth, as to the state causes of action, apparently seeking respondeat superior liability

16  against the county, Plaintiff relies upon conclusory allegations which fail to plead statutory

17  authority and fail to plead around immunities. The factual allegations are not plausible, instead

18  indicating the enforcement of a warrant and steps taken to avoid killing the dog.

19     Fifth, Plaintiff fails to allege facts to support punitive/exemplary damages.

20  Dated: October 15, 2018              James N. Fincher
21                                       Merced County Counsel

22                             By:    /s/ Roger S. Matzkind
23                                       Roger S. Matzkind
                                         Chief Civil Litigator
24                                       Attorney for Defendants County of Merced (including
                                         the Merced County District Attorney Office, a
25                                       department of the County of Merced), Andrea Valtierra-
                                         Gongora and Curtis Gorman
26

27

28