```
 1
 2
 3
 4
 5
 6
 7
 8                          UNITED STATES DISTRICT COURT
 9                        FOR THE EASTERN DISTRICT OF CALIFORNIA
10
11   GEORGE AGUARISTI,                         No. 1:18-cv-01053-DAD-EPG
12                  Plaintiff,
13         v.                                  ORDER GRANTING IN PART AND
                                               DENYING IN PART DEFENDANTS'
14   COUNTY OF MERCED, MERCED                  MOTION TO DISMISS
     COUNTY DISTRICT ATTORNEY
15   OFFICE, ANDREA VALTIERRA-                 (Doc. No. 10)
     GONGORA, CURTIS GORMAN, and
16   DOES 1–20,
17                  Defendants.
18
```

19      This matter came before the court on November 20, 2018 for a hearing on the motion to
20  dismiss plaintiff's first amended complaint ("FAC") brought on behalf of defendants County of
21  Merced, Merced County District Attorney Office, Andrea Valtierra-Gongora and Curtis Gorman.
22  (Doc. No. 10.) Attorney Joseph Sweeney appeared on behalf of plaintiff, and attorney Roger
23  Matzkind appeared on behalf of defendants. The court has considered the parties' briefs and oral
24  arguments, and for the reasons set forth below, will grant in part and deny in part defendants'
25  motion to dismiss.

26                                   **BACKGROUND**

27      Plaintiff's FAC alleges as follows. Plaintiff lives at and is the property owner of 20521
28  Reynolds Avenue, Dos Palos, California, 93620 (the "property"). (Doc. No. 8 at ¶ 18.)

                                                1

Plaintiff's property is fully enclosed with a fence, much of which is topped with barbed wire. (*Id.* at ¶ 19.) Plaintiff owns and keeps various animals on his property. (*Id.*) At the time of the relevant incident, plaintiff owned two dogs, one of which was a three-year-old dog named Samson. (*Id.* at ¶ 20.) Signs indicating "Beware of Dog" and other such warnings appear in plain view on the outside of plaintiff's front gate. (*Id.* at ¶ 22.)

On May 30, 2018, while plaintiff was asleep in his house located on his property, defendants Valtierra-Gongora and Gorman entered the property without consent from plaintiff or anyone with consenting authority. (*Id.* at ¶ 23.) Defendants were aware that there were dogs inhabiting the property. (*Id.* at ¶ 24.) After entering plaintiff's property, defendants Valtierra-Gongora and Gorman engaged with plaintiff's dogs. (*Id.* at ¶ 26.) Defendant(s) ultimately maced, shot, and killed plaintiff's dog Samson. (*Id.* at ¶ 25.)

On information and belief, plaintiff alleges that defendants thereafter failed to make any efforts to save Samson's life and did not check for a pulse. (*Id.* at ¶ 28.) Defendants seized Samson's body and removed it from the property. (*Id.* at ¶ 29.) Defendants then used plaintiff's water hose to wash away Samson's blood. (*Id.*) Thereafter, an officer on the scene employed by defendant County of Merced and/or Merced County District Attorney's Office urinated on plaintiff's property. (*Id.* at ¶ 30.)

Plaintiff awoke to find Samson missing, with no explanation as to what had happened. (*Id.* at ¶ 31.) Plaintiff alleges that if any warrant was issued, none was left at his property. (*Id.*) Plaintiff further alleges on information and belief that any warrant authorizing entry onto his property was invalid, and/or its scope was exceeded by defendants' actions. (*Id.* at ¶ 40.) Once plaintiff learned that Samson was in the possession of Animal Control, he drove to pick up Samson's body, which had been placed in a bag. (*Id.* at ¶ 32.)

Plaintiff was never arrested, taken into custody, or cited for anything in connection to defendants' entry onto his property on May 30, 2018. (*Id.* at ¶ 34.) On June 7, 2018, plaintiff filed a municipal claim for damages against the County of Merced relating to the May 30, 2018 incident. (*Id.* at ¶ 35.) Plaintiff further requested records from the County of Merced regarding the incident. (*Id.*) Plaintiff's request for records was denied on July 2, 2018, and plaintiff's

municipal claim for damages was denied on July 10, 2018.  (*Id.* at ¶¶ 35–36.)

Plaintiff filed his original complaint in this action on August 6, 2018.  (Doc. No. 1.)  On September 18, 2018, the parties stipulated to the filing of an amended complaint.  (Doc. No. 7.)  Plaintiff thereafter filed the operative FAC on October 1, 2018.  (Doc. No. 8.)  On October 15, 2018, defendants filed their motion to dismiss which is now pending before the court.  (Doc. No. 10.)  Plaintiff filed his opposition on November 5, 2018, and defendants filed their reply on November 13, 2018.  (Doc. Nos. 12, 13.)

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  A dismissal may be warranted where there is "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In evaluating whether a complaint states a claim on which relief may be granted, the court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989).  However, the court will not assume the truth of legal conclusions cast in the form of factual allegations.  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 676.  A complaint must do more than allege mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.

/////

**ANALYSIS**

**A.     Whether the Merced County District Attorney Office Is a Proper Party**

Defendants first move to dismiss the Merced County District Attorney Office as an improper party to this action. (Doc. No. 10-1 at 9–10.) In so moving, defendants rely on the decision *Garcia v. City of Merced*, 637 F. Supp. 2d 731, 760 (E.D. Cal. 2008), which held that the term "persons" under 42 U.S.C. § 1983 does not include municipal departments. The court in *Garcia* therefore found that the County of Merced "is the proper defendant in a § 1983 suit, not the Merced County Sheriff's Department, which is dismissed without leave to amend." *Id.* Here, defendants contend that the Merced County District Attorney Office, like a sheriff's department, is a municipal department in the context of a § 1983 suit,[1] and otherwise does not exist as a separately suable entity. (Doc. No. 10-1 at 9–10.)

Pursuant to Federal Rule of Civil Procedure 17(b)(3), the capacity to be sued is determined by the law of the state in which the court is located. California Government Code § 945 provides that "[a] public entity may sue or be sued." Meanwhile, California Government Code § 811.2 defines a "public entity" to include "the state, the Regents of the University of California, the Trustees of the California State University and the California State University, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in the State." Under these statutes, the Ninth Circuit has held that police departments and sheriff's departments are public entities under § 811.2, and thus, are capable of being sued under Rule 17(b). *See Streit v. County of Los Angeles*, 236 F.3d 552, 565–66 (9th Cir. 2001); *Karim-Panahi v. Los Angeles Police Department*, 839 F.2d 621, 624 n.2 (9th Cir. 1988); *Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 605 n.1 (9th Cir. 1986).

Defendants have provided no authority distinguishing the Merced County District Attorney Office from police and sheriff's departments. On the contrary, at least one district court in this circuit has found that "the DA's Office is a 'public entity' under California Government Code § 811.2 and properly named under Rule 17(b)." *Nazir v. County of Los Angeles*, No. CV

---

[1] The court notes, however, that the Merced County District Attorney Office is not named as a defendant in plaintiff's first cause of action under 42 U.S.C. § 1983. (*See* Doc. No. 8 at 8.)

10-06546 SVW (AGRx), 2011 WL 819081, at *5 (C.D. Cal. March 2, 2011) (citing cases). In *Nazir*, the court observed that "California law provides statutory immunity under certain circumstances to district attorney's offices precisely because they are 'public entities.' It would be inconsistent for California courts to hold that the DA's Office is a 'public entity' under one portion of the Code, only to hold it is not a 'public entity' under Section 945." *Id.* The undersigned finds this reasoning to be persuasive. Accordingly, and in light of the binding Ninth Circuit authority cited above, defendants' motion to dismiss the Merced County District Attorney Office as an improper party will be denied.

**B.     Whether Plaintiff Adequately Alleges a *Monell* Cause of Action**

Defendants next argue that plaintiff's FAC fails to allege any facts supporting a cause of action for municipal liability under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). (Doc. No. 10-1 at 10–12.) According to defendants, plaintiff alleges only a single incident where District Attorney investigators entered the yard of his property, and that although plaintiff's dog was shot and killed, the FAC alleges that defendants first used mace—a lesser, non-lethal means—in attempting to subdue the dog. (*Id.* at 11–12.) Defendants contend that although plaintiff argues the killing was "unjustified," the FAC does not allege whether the dog attacked defendant Valtierra-Gongora before she shot the dog. (*Id.* at 12.) As such, defendants argue that plaintiff's *Monell* cause of action must be dismissed because the facts alleged are inadequate to show that the county had a policy or custom which violated the Fourth Amendment. (*Id.*)

It is well-established that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 69; *see also Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997). To state a *Monell* claim against the County, plaintiff "must demonstrate that an 'official policy, custom, or pattern' on the part of [the County] was 'the actionable cause of the claimed injury.'" *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1143 (9th Cir. 2012) (quoting *Harper v. City of Los Angeles*, 533 F.3d 1010, 1022 (9th Cir. 2008)). A *Monell* claim can be established in one of three ways. *See Thomas v. County of Riverside*, 763

F.3d 1167, 1170 (9th Cir. 2014). First, a local government may be held liable when it acts "pursuant to an expressly adopted policy." *Id.* (citing *Monell*, 436 U.S. at 694); *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004). Second, a public entity may be held liable for a "longstanding practice or custom." *Thomas*, 763 F.3d at 1170. Under certain circumstances, a public entity may have a practice or custom of inaction, where it "fail[s] to implement procedural safeguards to prevent constitutional violations" or when it fails to adequately train its employees. *Tsao*, 698 F.3d at 1143 (citing *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."); *Flores v. County of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (requiring a plaintiff asserting a *Monell* claim based on a failure to train to allege facts showing that defendants "disregarded the known or obvious consequence that a particular omission in their training program would cause municipal employees to violate citizens' constitutional rights") (internal brackets omitted) (quoting *Connick*, 563 U.S. at 61). "Third, a local government may be held liable under § 1983 when 'the individual who committed the constitutional tort was an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier v. County of Santa Clara*, 591 F.3d 1232, 1250 (9th Cir. 2010) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016).

"Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), *holding modified on other grounds by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001); *see also Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999) ("A single constitutional deprivation ordinarily is insufficient to establish a longstanding practice or custom."); *Cain v. City of Sacramento*, No. 2:17-CV-00848-JAM-DB, 2017 WL 4410116, at *3 (E.D. Cal. Oct. 4, 2017) (dismissing a plaintiff's *Monell* claim because it alleged only a single encounter between plaintiff and jail staff). Although "[i]t is difficult to discern from the caselaw the quantum of

6

allegations needed to survive a motion to dismiss a pattern and practice claim," *Gonzalez v. County of Merced*, No. 1:16-cv-01682-LJO-SAB, 2017 WL 6049179, at *2 (E.D. Cal. Dec. 7, 2017), "where more than a few incidents are alleged, the determination appears to require a fully-developed factual record." *Lemus v. County of Merced*, No. 1:15-cv-00359-MCE-EPG, 2016 WL 2930523, at *4 (E.D. Cal. May 19, 2016), *aff'd*, Case No. 16-16092, 2017 WL 4772557 (9th Cir. Oct. 23, 2017); *see also Becker v. Sherman*, No. 1:16-cv-0828-AWI-MJS (PC), 2017 WL 6316836, at *9 (E.D. Cal. Dec. 11, 2017) (finding that "four assaults related to [plaintiff's] housing assignment and status as a transgender inmate . . . sufficiently alleged the existence of a CDCR custom"), *findings and recommendations adopted*, 2018 WL 623617 (E.D. Cal. Jan. 30, 2018); *Bagley v. City of Sunnyvale*, No. 16-CV-02250-JSC, 2017 WL 5068567, at *5 (N.D. Cal. Nov. 3, 2017) ("Where courts have allowed *Monell* claims to proceed at the motion to dismiss stage, plaintiffs have pled multiple incidents of alleged violations.").

Here, plaintiff's FAC alleges that defendant County of Merced "failed to adopt adequate policies and/or training procedures as to planning non-lethal ways in dealing when [sic] encountering dogs when entering private property and/or serving warrants." (Doc. No. 8 at ¶ 55.) The FAC further alleges:

> The County of Merced is also liable as the chief investigator and/or the individual in charge of policymaking within the District Attorney's Office for investigations in that (1) the policies and/or training procedures of Merced County law enforcement and/or District Attorneys [sic] office regarding the carrying out of warrants and/or use of force and/or private property animal encounters were either non-existent or inadequate (2) the counties [sic] policy maker was deliberately indifferent in adopting the policies and/or training procedures, and (3) these non-existent [sic] and/or inadequate policies and/or training procedures directly caused plaintiffs [sic] injuries.

(*Id.* at ¶ 56.) These are the extent of the allegations set forth in plaintiff's FAC with respect to his *Monell* liability claim.

These conclusory allegations fail to provide a sufficient basis from which one could plausibly infer municipal liability. Notably, not a single similar incident to this one is alleged in plaintiff's FAC. Though plaintiff cites to case law holding that a claim of municipal liability is sufficient to withstand a motion to dismiss "even if the claim is based on nothing more than a

bare allegation that the individual officers' conduct conformed to official policy, custom, or practice," *Shah v. County of Los Angeles*, 797 F.2d 743 (9th Cir. 1986), the Ninth Circuit and district courts have since rejected this low threshold in the wake of the Supreme Court decisions in *Iqbal* and *Twombly*. *See, e.g.*, *Rodriguez v. City of Modesto*, 535 Fed. App'x 643, 646 (9th Cir. 2013) (affirming district court dismissal of *Monell* claim that was based only on conclusory allegations);[2] *Via v. City of Fairfield*, 833 F. Supp. 2d 1189, 1196 (E.D. Cal. 2011) (dismissing *Monell* claim because it was based on conclusory allegations, and noting that after *Iqbal*, "courts have repeatedly rejected such conclusory allegations that lack factual content from which one could plausibly infer *Monell* liability") (collecting cases). The court recognizes the inherent difficulty of identifying the presence or lack of specific policies prior to the conducting of discovery, but "that is nonetheless the burden of plaintiffs in federal court." *Roy v. Contra Costa County*, No. 15-cv-02672-THE, 2016 WL 54119, at *4 (N.D. Cal. Jan. 5, 2016). The Supreme Court has held that threadbare allegations are insufficient "to unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. For this reason, defendants' motion to dismiss the *Monell* cause of action will be granted.

At the hearing on the pending motion, plaintiff's counsel represented that plaintiff is incapable of pleading additional facts that would support the *Monell* cause of action at this time, but that the exchange of discovery may later enable plaintiff to do so. For this reason, plaintiff's *Monell* cause of action will be dismissed without prejudice, subject to the filing of a future motion to amend the complaint to the extent that facts supporting such a *Monell* claim are uncovered during discovery in this case

**C.      Whether Defendants Valtierra-Gongora and Gorman Are Entitled to Qualified Immunity**

Defendants next argue that individual defendants Valtierra-Gongora and Gorman are entitled to dismissal on qualified immunity grounds. (Doc. No. 10-1 at 12–17.) Evaluating a claim of qualified immunity involves two inquiries: "(1) whether the defendant violated a

---

[2] Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

8

constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 945 (9th Cir. 2017). Courts have discretion to choose the order in which to answer these questions. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Plaintiff bears the burden under § 1983 to prove that the conduct of defendants Valtierra-Gongora and Gorman violated a clearly established constitutional right. *Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991). Whether a right is "clearly established" is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Davis v. City of Las Vegas*, 478 F.3d 1048, 1056 (9th Cir. 2007) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)); *see also Thompson v. Rahr*, 885 F.3d 582, 587 (9th Cir. 2018).

Here, plaintiff alleges that the individual defendants entered his property without consent and without a valid warrant. Even if defendants had a valid warrant authorizing their entry onto plaintiff's property or were otherwise legally entitled to do so, plaintiff alleges that the shooting and killing of his dog was unreasonable. Among other facts, the FAC alleges that the defendant officers were aware that dogs inhabited the property, because plaintiff's property is gated and contains "Beware of Dog" signs and other such warnings outside of plaintiff's front gate in plain view. (Doc. No. 8 at ¶¶ 19, 21, 22, 24.) The FAC further alleges that, while plaintiff was asleep in his home, defendant officers entered through the front gate of plaintiff's property and thereafter maced, shot, and killed plaintiff's dog, Samson. (*Id.* at ¶¶ 25, 26.) The FAC alleges that the killing of Samson was unjustified and unreasonable, in part because defendants failed to make any attempts to save Samson's life, removed Samson's body from the premises, and washed away the dog's blood. (*Id.* at ¶¶ 28, 29.) Plaintiff also alleges that he was not provided any explanation as to what happened and that no warrant was left on his property. (*Id.* at ¶ 31.) Moreover, plaintiff was never arrested, taken into custody, or even cited in connection with defendants' presence on his property that day. (*Id.* at ¶ 34.)

The Ninth Circuit and its sister circuits have held that the unreasonable killing of a companion animal constitutes an unconstitutional seizure of property under the Fourth Amendment. *See San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402

F.3d 962, 975 (9th Cir. 2005) ("The killing of [a] dog is a destruction recognized as a seizure under the Fourth Amendment and can constitute a cognizable claim under § 1983.") (citation omitted); *Carroll v. County of Monroe*, 712 F.3d 649, 651 (2d Cir. 2013); *Altman v. City of High Point*, 330 F.3d 194, 204–05 (4th Cir. 2003); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 211 (3d Cir. 2001). Construing the allegations of the FAC in the light most favorable to plaintiff, as this court must, the court concludes that plaintiff has plausibly alleged a Fourth Amendment violation.

Because plaintiff can plausibly allege that defendants' actions were in violation of his constitutional rights, the court next considers whether that right was clearly established at the time of the alleged violation. *Isayeva*, 872 F.3d at 945. Both parties acknowledge that in *Hells Angels*, the Ninth Circuit held that a reasonable officer should have known at the time of the events at issue in that case that "the Fourth Amendment forbids the killing of a person's dog, or the destruction of a person's property, when that destruction is unnecessary—*i.e.*, when less intrusive, or less destructive, alternatives exist." 402 F.3d at 978–79. The Ninth Circuit noted that "[r]easonableness is the touchstone of any seizure under the Fourth Amendment," and that "[t]o determine whether the shooting of the dogs was reasonable, we balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Id.* at 975 (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Defendants argue that they are entitled to dismissal on qualified immunity grounds because of the distinctions between the facts in *Hells Angels* and those alleged by plaintiff here. They point out that unlike the case in *Hells Angels*, there are no allegations here that defendants "hunted out" the dogs, which defendants argue implies that the dog was the initial aggressor. (Doc. No. 13 at 3.) Defendants further contend that because the FAC alleges that defendants maced the dog Samson before shooting it, it should be inferred that defendants only resorted to lethal force when mace failed to subdue the dog. (*Id.*) Finally, defendants argue that rather than leaving the bleeding dog on the premises as the law enforcement officers did in *Hells Angels*, the FAC alleges that defendants removed the dog's body and cleaned the area, thus demonstrating the reasonableness of the officers' conduct. (*Id.*)

10

Despite defendants' attempts to distinguish the facts of *Hells Angels* from the case at hand, however, the facts alleged in the FAC do not make clear that defendants are entitled to qualified immunity. At this early stage of the litigation, the court draws all inferences from the facts alleged in favor of the plaintiff. Even though the FAC does not allege that defendants deliberately sought out plaintiff's dog, the court cannot conclude, as defendants would have it do, that the FAC alleges that the dog was the initial aggressor. Simply because the FAC alleges that defendants "maced, then shot and killed" the dog, it would be a mischaracterization of that allegation to conclude that the FAC alleges that defendants reasonably employed the mace and exhausted that option and other available non-lethal options before resorting to lethal force. Finally, simply because defendants cleaned up and removed the dog's body after shooting it does not lead to a reasonable inference that the FAC alleges that defendants acted charitably. Rather, plaintiff alleges that in carrying out these acts defendants sought to cover up their wrongdoing.

Moreover, there are no allegations in the FAC as to the reason for defendants' presence on plaintiff's property in the first place. The court cannot "balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake'" (*Hells Angels*, 402 F.3d at 975), when the court has no allegations before it as to what the governmental interests were. The court must look to the "totality of the circumstances to determine whether the destruction of property was reasonably necessary to effectuate the performance of the law enforcement officer's duties." *Hells Angels*, 402 F.3d at 975. Reasonableness, and an assessment of the totality of the circumstances, is necessarily a fact-intensive inquiry that is better reserved for the summary judgment stage on a fully developed factual record. Accordingly, the court finds that defendants are not entitled to dismissal of the FAC on qualified immunity at this time.

**D. Whether Plaintiff Adequately Alleges State Law Claims**

    1. Sufficiency of Factual Allegations

        i. *Trespass and Trespass to Chattel*

Defendants next argue that plaintiff has failed to state a claim for either trespass or trespass to chattel. (Doc. No. 10-1 at 17, 21.) Trespass is the intentional use of the property of

another without authorization and without privilege. *United States v. Imperial Irr. Dist.*, 799 F. Supp. 1052, 1059 (S.D. Cal. 1992). Trespass to chattel, meanwhile, "lies where an intentional interference with the possession of personal property has proximately caused injury." *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350–51 (2003). Defendants contend that if a warrant existed, there could be no trespass or trespass to chattel because defendants' presence was authorized. (Doc. No. 10-1 at 17, 21.) Alternatively, defendants argue that even if such a warrant was invalid, plaintiff "fails to specify any defects to support this conclusory allegation." (*Id.*)

The FAC alleges that defendants' presence on plaintiff's property was unauthorized because he did not consent to defendants entering his property, and that *if* a warrant authorizing the entry existed, plaintiff believes that any such warrant was invalid and/or its scope was exceeded by defendants. (Doc. No. 8 at ¶¶ 23, 39, 40.) Although the court accepts as true all factual allegations contained in a complaint, the court need not accept as true plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 678 ("[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'") (quoting *Twombly*, 550 U.S. at 557). *Here, p*laintiff's FAC fails to allege any facts showing that any warrant authorizing entry onto his property was invalid or that defendants exceeded the scope of any such warrant. The court will therefore grant defendants' motion to dismiss plaintiff's causes of action for trespass and trespass to chattel with leave to amend.[3]

ii. *Intentional Infliction of Emotional Distress*

Defendants next argue that the FAC fails to set forth factual allegations supporting the conclusion that defendants' conduct was "extreme and outrageous" or that defendants acted with the intent to cause serious emotional distress. (Doc. No. 10-1 at 21–22.) Under California law, a

---

[3] The court notes that counsel for defendants represented in their reply brief and at the hearing on the pending motion that the parties had met and conferred prior to the filing of this motion, and that the defense provided plaintiff with, among other documents, a copy of the criminal complaint against plaintiff's tenant as well as the warrant issued for the tenant's arrest. (Doc. No. 13 at 2.) The court takes seriously the requirements of Rule 11(b) of the Federal Rules of Civil Procedure and advises plaintiff's counsel only to amend the causes of action for trespass and trespass to chattel based on allegations of an invalid arrest warrant if counsel can do so in good faith.

claim for IIED requires a plaintiff to establish: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991). Conduct actionable as IIED must be so outrageous as to "exceed all bounds of that usually tolerated in a civilized community." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009).

While the court may, in certain instances, conclude the specific conduct alleged is insufficiently outrageous to sustain such a claim as a matter of law, *see Davidson v. City of Westminster*, 32 Cal. 3d 197, 210 (1982), this element of an IIED claim is commonly seen as a factual issue. *See Yun Hee So v. Sook Ja Shin,* 212 Cal. App. 4th 652, 672 (2013) ("Thus, whether conduct is 'outrageous' is usually a question of fact."); *Ragland v. U.S. Bank Nat'l Ass'n*, 209 Cal. App. 4th 182, 204 (2012) ("Whether conduct is outrageous is usually a question of fact."); *Spinks v. Equity Residential Briarwood Apts.*, 171 Cal. App. 4th 1004, 1045 (2009) ("In the usual case, outrageousness is a question of fact."); *Hawkins v. Bank of Am. N.A.*, No. 2:16-cv-00827-MCE-CKD, 2017 WL 590253, at *5 (E.D. Cal. Feb. 14, 2017).

Based on plaintiff's allegation that defendants removed the dog and washed away the blood, defendants argue that the court should infer that defendants sought to avoid inflicting distress and that they had "good and non-malicious intents." (Doc. No. 10-1 at 22.) However, at the motion to dismiss stage, the court construes the allegations in the light most favorable to the plaintiff. Plaintiff argues that, given the allegation that the defendants removed Samson's body and washed away the blood, the court should infer that defendants were aware that their conduct was wrongful and sought to cover it up. (Doc. No. 8 at ¶ 29.) Moreover, the FAC also alleges entrance by defendants upon plaintiff's property was unauthorized and invalid, that the killing of his dog was unjustified and unreasonable, the removal of the dog's body was without notification to plaintiff, and that one of the officers employed by defendants urinated on plaintiff's property after his dog was killed. (*Id.* at ¶¶ 25–33.) Assuming all the facts alleged to be true, a jury could find that the actions of defendants were outrageous and outside the bounds of what is usually

tolerated by civilized society, and intended to inflict emotional distress. Defendants' reliance on the decision in *Perez v. City of Placerville*, No. CIV. S-07-927 FCD GGH, 2008 WL 4279386 (E.D. Sept. 9, Cal. 2008), is misplaced. (Doc. No. 10-1 at 21.) In *Perez*, the court dismissed the IIED claim *at summary judgment* because the undisputed evidence before the court at that stage of the litigation showed that the officer killed the dog in defense of a fellow officer and a police canine who were being attacked by the dog. *Perez*, 2008 WL 4279386, at *10. Defendants' motion to dismiss the IIED cause of action will therefore be denied.

        iii.   *Negligence, Gross Negligence, and Gross Negligence Per Se*

Defendants next move to dismiss plaintiff's causes of action for negligence, gross negligence, and gross negligence per se on the grounds that plaintiff has failed to allege how the defendants were negligent, and that the allegations of the FAC do not describe an "extreme departure from the ordinary standard of conduct." (Doc. No. 10-1 at 22–23.) The elements of a negligence cause of action are: (1) a legal duty to use care; (2) a breach of such legal duty; and (3) the breach as the proximate or legal cause of the resulting injury. *Ladd v. Cty. of San Mateo*, 12 Cal. 4th 913, 917 (1996). Gross negligence, in addition to the traditional elements of negligence, requires a plaintiff to allege extreme conduct on the part of the defendant. *Rosencrans v. Dover Images, Ltd.*, 192 Cal. App. 4th 1072, 1082 (2011). "The conduct alleged must rise to the level of either a want of even scant care or an extreme departure from the ordinary standard of conduct." *Id.* (citation and quotation marks omitted). Defendants argue that the FAC is insufficient to state a claim for negligence because plaintiff fails to allege how defendants were negligent and fails to allege an applicable state statute that would waive sovereign immunity. (Doc. No. 10-1 at 23.)

In opposition, plaintiff argues that the FAC explicitly alleges: "It is the duty of one who undertakes to perform the services of a police officer or paramedic to have the knowledge and skills ordinarily possessed and to exercise the care and skill ordinarily used in like cases by police officers or paramedics in the same or similar locality and under similar circumstances." (Doc. No. 8 at ¶ 122.) The FAC also alleges that defendants' conduct fell below this standard when defendants unreasonably shot and killed Samson and failed to take any measures to save the dog's

14

life. (*Id.* at ¶ 28.) In addition, the FAC alleges that defendants are liable pursuant to California Government Code § 820(a), which provides that "[e]xcept as otherwise provided by statute (including Section 820.2),[4] a public employee is liable for injury caused by his act or omission to the same extent as a private person," and California Government Code § 815.2, which provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." (*Id.* at ¶ 125.) As such, defendants' reliance on the decision in *Perez v. City of Placerville* is once again inapposite. (Doc. No. 10-1 at 23.) There, the court found that plaintiff "both fails in her complaint and in opposing defendants' motion to identify any state statute declaring defendants' conduct in this action unlawful." *Perez*, 2008 WL 4279386, at *9. The factual allegations here and the identification of the state statutes imposing potential liability on defendants are adequate to allege a negligence cause of action.

Defendants further argue that the FAC is devoid of any factual allegations demonstrating an "extreme departure from the ordinary standard of conduct" sufficient to maintain a claim for gross negligence or gross negligence per se. (Doc. No. 10-1 at 22.) Defendants rely again on the allegation that defendants' removal of the dog's body and cleaning of the blood demonstrates the "individual investigators' good and non-malicious intents." (*Id.*) As the court explained above, however, it must draw all inferences from the allegations of the FAC in favor of the plaintiff at the pleading stage. Plaintiff argues that his allegations are sufficient to show an extreme departure from the ordinary standard of conduct because, unbeknownst to plaintiff at the time and despite ample warning about the presence of dogs on plaintiff's property, defendants killed plaintiff's dog, made no attempts to save the dog's life, removed the dog from the premises, and washed away the dog's blood to cover up their wrongful conduct, and thereafter an officer urinated on plaintiff's property. (Doc. No. 12 at 23.) The court agrees that these allegations are sufficient to state a cause of action for gross negligence and gross negligence per se. Defendants'

---

[4] The court addresses defendants' additional argument for state law immunity under California Government Code § 820.2 below.

motion to dismiss plaintiff's negligence, gross negligence, and gross negligence per se causes of action will therefore be denied.

2. State Law Immunity

i. *California Penal Code § 835a*

Defendants also assert that, regardless of whether plaintiff has stated sufficient factual allegations to support his state law claims, the individual defendants are nonetheless entitled to immunity under § 835a of the California Penal Code. (Doc. No. 10-1 at 19–23.) Section 835a provides that:

> Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance.
>
> A peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested . . ..

According to defendants, the factual allegations of plaintiff's FAC create a clear inference that defendants used reasonable force to overcome resistance. (*Id.* at 19.)

Immunity does not apply, however, when officers use unreasonable force in effecting an arrest. *See Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002) ("California denies immunity to police officers who use excessive force in arresting a suspect."); *Burns v. City of Redwood City*, 737 F. Supp. 2d 1047, 1067 (N.D. Cal. 2010) ("These [immunity] provisions plainly do *not* apply, however, to officers who use *unreasonable* force in effecting an arrest."); *Scruggs v. Haynes*, 252 Cal. App. 2d 256, 262 (1967). As the court articulated above, in light of the allegations of plaintiff's FAC, the reasonableness of the officers' actions is a fact-intensive inquiry that cannot be determined at the pleading stage. The court will therefore deny defendants' motion to dismiss plaintiff's state law causes of action on the basis of immunity under California Penal Code § 835a.

ii. *California Government Code § 820.2*

The individual defendants also assert they are entitled to dismissal on immunity grounds from plaintiff's state law claims under California Government Code § 820.2. (Doc. No. 10-1 at

17–23.) That provision states "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov. Code § 820.2. "To determine which acts are discretionary, California courts do not look at the literal meaning of 'discretionary,' because '[a]lmost all acts involve some choice between alternatives.'" *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1379 (9th Cir. 1998) (quoting *Caldwell v. Montoy*, 10 Cal. 4th 972, 981 (1995)). Instead, this immunity protects "basic policy decisions," but not "'operational' or 'ministerial' decisions that merely implement a basic policy decision." *Id.* (quoting *Johnson v. State of California*, 69 Cal. 2d 782, 796 (1968)).

Defendants move to dismiss each of plaintiff's state law claims on the grounds that plaintiff purportedly "fails to plead inapplicability of immunities." (*See* Doc. No. 10-1 at 17–23.) However, it is the "government defendants [who] have the burden of establishing that they are entitled to immunity for an actual policy decision made by an employee who 'consciously balance[ed] risks and advantages." *A.E. ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 639 (9th Cir. 2012) (quoting *Johnson*, 69 Cal. 2d at 794 n.8); *see also Recchia v. City of L.A. Dep't of Animal Servs.*, 889 F.3d 553, 563 (9th Cir. 2018) ("[T]o be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place.") (quoting *Johnson*, 69 Cal. 2d at 794 n.8)).

Applying these holdings, and taking the allegations of the FAC as true, the court cannot conclude at this stage of the proceedings that defendants are entitled to discretionary act immunity. *See A.E.*, 666 F.3d at 640 ("It would be odd indeed if a plaintiff included in a Complaint allegations that would establish a basis for finding discretionary act immunity on the part of government defendants."); *Lopez v. Southern Cal. Rapid Transit Dist.*, 40 Cal. 3d 780, 794 (1985) (holding that trial court erred in sustaining demurrer on the grounds of immunity under § 820.2 because the state must make a showing that a policy decision took place, and "[s]uch a

/////

/////

/////

showing was not and could not have been made by the county at the demurrer stage"); *Elton v. County of Orange*, 3 Cal. App. 3d 1053, 1058 (1970) (same).[5]

Moreover, to the extent that plaintiff "must plead facts sufficient to show his cause of action lies outside the breadth of any applicable statutory immunity," *Keyes v. Santa Clara Valley Water Dist.*, 128 Cal. App. 3d 882, 885–86 (1982), the court finds that plaintiff has done so here because nothing in the FAC alleges that defendants' conduct amounted to a "basic policy decision . . . committed to coordinate branches of government." *Johnson*, 69 Cal. 2d at 794; *see also id.* (stating the correct inquiry is to "find and isolate those areas of quasi-legislative policy-making which are sufficiently sensitive to justify a blanket rule" of immunity). There is nothing in the allegations of the FAC suggesting that defendants' conduct here constituted "quasi-legislative policy-making" as opposed to lower-level, "ministerial" decisions that merely implemented policies already formulated. *Id.* at 797. Accordingly, defendants' motion to dismiss plaintiff's state law causes of action pursuant to California Government Code § 820.2 will be denied.

### iii. *California Government Code § 815.2*

Finally, the County defendants argue that if the individual defendants are immune under California Penal Code § 835a and California Government Code § 820.2, the County defendants are also immune under California Government Code § 815.2. (Doc. No. 10-1 at 20.) As previously discussed, § 815.2 of the California Government Code provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." This provision authorizes the vicarious liability of a public entity for the acts or omissions of its employees. However, as explained above, because the individual defendants are not entitled to dismissal on state law immunity grounds at this time, neither are the County defendants entitled

---

[5] The court in *Conway v. County of Tuolumne*, 231 Cal. App. 4th 1005 (2014), a decision on which defendants rely (*see* Doc. No. 10-1 at 19), did not find the defendants to be entitled to immunity at the pleadings stage of the litigation. Rather, the appellate court in *Conway* merely affirmed a trial court decision that found discretionary act immunity at the summary judgment stage. *Id.* at 1008, 1011.

to immunity under California Government Code § 815.2.  Defendants' motion to dismiss the state law causes of action based on that provision will therefore also be denied.

**E.      Whether Plaintiff Adequately Alleges a Basis for Punitive Damages**

Punitive damages are available for actions under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).  California law generally authorizes the award of punitive damages when it can be shown "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294(a).  California courts have generally construed this language to mean "intent to injure or willful and conscious disregard of others' rights."  *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (2000).

Assuming all of the facts alleged in the FAC to be true, the court cannot conclude that, as a matter of law, plaintiff would be unable to show that defendants exhibited either a "reckless or callous indifference" or a "willful and conscious disregard" of plaintiff's rights.  As noted above, the FAC alleges that defendants entered plaintiff's property without consent or authorization and, while plaintiff was asleep, unjustifiably and unreasonably killed plaintiff's dog, removed the dog's body without notifying plaintiff, urinated on plaintiff's property, and forced plaintiff to retrieve his dog's body in a bag from Animal Control the following day.  In light of these allegations, plaintiff's punitive damages claim survives defendants' motion to dismiss.

**CONCLUSION**

For the reasons set forth above:

1. Defendants' motion to dismiss (Doc. No. 10) is granted in part;
2. Plaintiff's *Monell* cause of action against defendant County of Merced is dismissed without prejudice;
3. Plaintiff's causes of action for trespass and trespass to chattel are dismissed with leave to amend;

/////

/////

4. Any amended complaint plaintiff may elect to present shall be filed within fourteen (14) days of the date of this order; and

5. Defendants' motion to dismiss (Doc. No. 10) is denied in all other respects.

IT IS SO ORDERED.

Dated: **January 25, 2019**

UNITED STATES DISTRICT JUDGE